UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x

SEAN MESCALL,

                Petitioner,                              ORDER

       -against-                             No. 25-CV-6172 (CS)

WARDEN,

                Respondent.

-------------------------------------------------x

Seibel, J.

      Before the Court is Petitioner Sean Mescall's response, (ECF No. 6 (the "Response")), to the Order to Show Cause issued by the Court on August 21, 2025, (ECF No. 5 (the "OSC")). The Court assumes the reader's familiarity with Petitioner's Petition, (ECF No. 1 (the "Petition")), and the OSC.

      Petitioner was convicted in two cases in the Western District of North Carolina, and his supervised release was transferred to this Court. See Nos. 25-CR-128 and 25-CR-137. In a petition dated April 1, 2025, he has been charged with violating his supervised release in those cases, based on new crimes for which he has been convicted in state court.

      In his Petition, Petitioner seems to argue that his release date from the Bureau of Prisons ("BOP") was erroneously calculated, in that he was entitled to but did not receive First Step Act ("FSA") credits, and that had it been correctly calculated, his three years of supervised release would have begun and ended sooner. In his response to the OSC, Petitioner seems to suggest that his prison term ended and his supervised release began when he was released from prison to home confinement through a Residential Reentry Center ("RRC") in March 2022. Although he does not spell it out, the date his supervised release began and ended is significant, because if his

three-year term of supervised release ran before April 1, 2025, the petition for violation of supervised release ("VOSR"), filed on that date, was untimely.

The theory set forth in the Response fails. By his own account, he was still in BOP custody during his home confinement. *See* Response at 1-2; *Mescall v. Bronx Residential Ctr.*, No. 22-CV-4557, 2022 WL 3362330, at *1 (S.D.N.Y. Aug. 15, 2022). As made clear in the OSC, his supervised release began on August 23, 2023. (OSC at 2.) *See also* No. 22-CV-4557, ECF No. 76 (noting that Petitioner was released from confinement on August 23, 2023). The VOSR petition is thus timely, as the three-year term has not yet run.

Petitioner's claim that his release date would have been sooner had he not been deprived of FSA credits fares no better. Not only does Petitioner provide no facts regarding this alleged miscalculation, but it is apparent that Petitioner made no effort to pursue his administrative remedies with respect to it. FSA time credits, which if appropriate can reduce an inmate's prison time, are calculated by the BOP. Petitioner does not claim to have sought administrative review from BOP. Making an inquiry to personnel at the RRC or to his Probation Officer does not amount to exhausting administrative remedies available within BOP. Nor does requesting early termination of supervised release.

Petitioner argues that he should be excused from exhausting because it is impossible for him to do so now. But Petitioner had every opportunity to exhaust his administrative remedies at the time the allegedly incorrect decisions were being made. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001) (federal inmate challenging execution of sentence must exhaust administrative remedies or show cause for the default and resulting prejudice). Petitioner supplies no cause for his failure to timely exhaust, and that failure does not give him a second chance now that he is accused of violating supervised release. Even if Petitioner's

release date were erroneously calculated, his three-year term of supervised release must, unless modified, last three years, so any violations during that three-year period – whether the date it commenced was correct or not – would properly be treated as a violation of supervised release. One cannot retroactively immunize a crime committed on supervision by arguing that the term should have commenced sooner. Petitioner's failure to raise the alleged calculation error when advised of his release date, during his home confinement, or at any time before he was charged with a new crime suggests that he is trying to do just that.

Petitioner also contends that his three years of supervision terminated on March 26, 2025, when the Court, in Nos. 25-CR-128 and 25-CR-137, accepted the transfer of supervision from the Western District of North Carolina, terminated Petitioner as a defendant, and closed the cases. Those steps were purely administrative and did nothing to affect the term of Petitioner's supervised release. When this Court accepts a transfer of jurisdiction, the Clerk routinely opens a case so that a docket number is assigned, and then immediately closes it, until such time, if ever, that there is something that the Court needs to do. Unfortunately, in this case the violation petition was filed shortly after the transfer was accepted.

Because Petitioner has not shown that he has exhausted his administrative remedies, his Petition is dismissed without prejudice as unexhausted. *See United States v. Whaley*, 148 F.3d 205, 207 (2d Cir. 1998) ("Although prisoners may seek judicial review of the BOP's sentencing determinations after exhausting their administrative remedies, the district court is without jurisdiction to compute sentencing credit if a prisoner does not challenge his sentence and has not sought administrative review.").

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: September 24, 2025
       White Plains, New York

                                                        _____
                                                           CATHY SEIBEL, U.S.D.J.